BEN SUTER, CASB No. 107680
ben.suter@kyl.com
KEESAL YOUNG & LOGAN
A Professional Corporation
578 Jackson Street
San Francisco, CA 94133
Telephone: (562) 436-2000
Facsimile: (562) 436-7416

ALFRED J. BENNINGTON, JR.
FLSB No. 404985 (seeking *Pro Hac Vice* admission)
BBennington@shutts.com
GLENNYS ORTEGA RUBIN
FLSB No. 556361 (seeking *Pro Hac Vice* admission)
GRubin@shutts.com
SHUTTS & BOWEN LLP
300 South Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 423-3200
Facsimile: (407)425-8316

Attorneys for Plaintiffs WYNDHAM VACATION
OWNERSHIP, INC., WYNDHAM VACATION
RESORTS, INC., and WYNDHAM RESORT
DEVELOPMENT CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WYNDHAM VACATION OWNERSHIP, INC. a Delaware corporation; WYNDHAM VACATION RESORTS, INC., a Delaware corporation; WYNDHAM RESORT DEVELOPMENT CORPORATION; an Oregon Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> MIRANDA DEMPSEY, APLC d/b/a MCCROSKEY LEGAL, DEBT PRO | Case No. _____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE § 6155** |

LEGAL, and MXM LEGAL, a California )
professional law corporation; and )
MIRANDA MCCROSKEY, ESQ., an )
individual, )
)
                    Defendants. )
)
_____ )

Plaintiffs Wyndham Vacation Ownership, Inc. ("WVO"); Wyndham Vacation Resorts, Inc. ("WVR"); and Wyndham Resort Development Corporation ("WRDC") (collectively, "Wyndham"), bring this suit for injunctive relief against Defendants, Miranda Dempsey, APLC ("Miranda Dempsey, APLC") d/b/a McCroskey Legal, Debt Pro Legal, and MXM Legal (collectively, along with Miranda Dempsey, APLC, "MXM Legal"); and Miranda McCroskey ("McCroskey") (collectively, the "McCroskey Defendants"), jointly, severally and/or in the alternative, and hereby allege as follows:

## <u>OVERVIEW OF UNLAWFUL REFERRAL SCHEME</u>

1.     This is an action brought to enjoin the McCroskey Defendants' violation of prohibitions on unlawful referrals that govern the practice of law in California.

2.     The McCroskey Defendants' violations are driven by their intimate involvement in a fraudulent "timeshare exit" scheme that has been adjudicated as unlawful by federal courts but continues through Rich Folk ("Folk") and William Wilson's ("Wilson") pervasive use of trusts, shell companies, front companies, nominees, and other means to conceal their nefarious activities and true identities.

3.     Folk and Wilson, co-trustees of the Collaborative Administrative Trust (the "Trust"), operate several fraudulent "timeshare exit" companies in California, with Pandora Marketing, LLC d/b/a Timeshare Compliance ("Pandora Marketing") being the most prominent. All companies owned or operated by Folk, Wilson, or the Trust (which is wholly owned by Folk and Wilson) that advertise a release from a timeshare obligation, including Pandora Marketing, Savi Collaborative LLC (which also operates as Timeshare Compliance), and Light on Marketing LLC d/b/a Timeshare Contract Resolution, will be collectively referred to as the "Front Companies."

**COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE § 6155**       - 2 -

4.     These Front Companies use various advertising methods designed to target and solicit timeshare owners under the false pretense of offering a legitimate process to release or "exit" them from their timeshare interest.

5.     In reality, the Front Companies lack a legitimate process. Instead, they induce timeshare owners, including Wyndham owners, to breach their timeshare contracts through nonpayment, resulting in the loss of their timeshare ownership due to default.

6.     One key element in the Front Companies' solicitation is the mischaracterization that their services constitute legal representation when, in reality, these operations are nothing more than a sales apparatus.

7.     This illusory promise of legal services allows the Front Companies to divert the money owed to Wyndham (and other developers) under timeshare contracts, and more, to themselves.

8.     To create impression that their sale of legal services is legitimate, the Front Companies refer unsuspecting timeshare owners to California law firms and lawyers.

9.     These referrals are a key component of the scheme. Or, as United States District Judge Robert N. Scola, Jr., aptly put it:

> [Folk, Wilson, and Pandora Marketing's] referral of the timeshare owner to the attorney is the <u>sole</u> means by which [they] attempt to make good on the promise to cancel a customer's timeshare contract … [and] absent such referral, the scheme would fail.

*Bluegreen Vacations Unlimited, Inc. et al. v. Timeshare Lawyers P.A., et al.*, Case No. 20-24681, ECF No. 561 at 25, 41 (S.D. Fla. Oct. 27, 2023) (emphasis added).

10.     Thus, the exclusive means by which the Front Companies provide advertised services—which is, consequently, the lifeline of the scheme—is referral to attorneys.

11.     California Business and Professions Code section 6155 mandates, *inter alia*, that any individual or entity operating for the direct or indirect purpose, in whole or in

1    part, of referring potential clients to attorneys be, at minimum, registered with the State

2    Bar of California.

3         12.    Yet, neither Folk, Wilson, nor the Trust are registered with the State Bar of

4    California. In fact, upon information and belief, *none* of the Front Companies are

5    registered with the State Bar of California.

6         13.    Section 6155 states that **no attorney shall** accept a referral of potential

7    clients from a referral source **unless** the referral source is (1)  registered with the State

8    Bar of California, (2) operated in conformity with minimum standards for a lawyer

9    referral service set by the State Bar, **and** (3) the combined charges to the potential client

10   by the referral source and the attorney do not exceed the total cost that the client would

11   normally pay if no referral service were involved.

12        14.    Notwithstanding that McCroskey has been licensed to practice in California

13   for approximately twenty-seven (27) years and should know the obligations of attorneys

14   in this state, the McCroskey Defendants have accepted, and continue to accept, referrals

15   from Folk, Wilson, the Trust, and/or the Front Companies.

16        15.    This action arises from the McCroskey Defendants' unlawful acceptance of

17   referrals from non-registered lawyer referral services in violation of California Business

18   and Professions Code section 6155.

19        16.    The McCroskey Defendants' conduct—which defies the intent of the

20   section, is unlawful, and harms Wyndham, attorneys, and consumers of legal services—

21   must be arrested.

22                                    **PARTIES**

23        17.    Plaintiff Wyndham Vacation Ownership, Inc. is a corporation organized and

24   existing under the laws of the State of Delaware with a principal place of business located

25   at 6277 Sea Harbor Drive, Orlando, Florida 32821.

26        18.    Plaintiff Wyndham Vacation Resorts, Inc. is a corporation organized and

27   existing under the laws of the State of Delaware with a principal place of business located

28   at 6277 Sea Harbor Drive, Orlando, Florida 32821.

19. Plaintiff Wyndham Resort Development Corporation is a corporation organized and existing under the laws of the State of Oregon with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

20. Defendant, Miranda Dempsey, APLC , is a professional law corporation organized and existing under the laws of the State of California and with a principal address at 137 S. Prospect Avenue, Tustin, California 92780.

21. Defendant, McCroskey, is an individual, citizen of the State of California, and member of the California Bar. McCroskey is the owner and director of MXM Legal. McCroskey also purports to be the "head attorney and founder" of MXM Legal.

## JURISDICTION & VENUE

### A. Subject Matter Jurisdiction

22. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, the benefit to Wyndham from the injunctive relief sought in this action exceeds $75,000 as the loss of the amounts due under timeshare contracts, and other losses described in paragraphs 105 through 115, resulting from the McCroskey Defendants' participation and furtherance of the unlawful referral scheme described herein—which violates Section 6155—exceeds $75,000. Moreover, upon information and belief, the cost to the McCroskey Defendants from the enforcement of the injunctive relief also exceeds $75,000.

### B. Personal Jurisdiction

23. This Court has personal jurisdiction over defendants for the following reasons:

    a. Miranda Dempsey, APLC is organized under the laws of, and operates a principal place of business in, the State of California, and does business

under the following fictitious business names: "McCroskey Legal," "Debt Pro Legal" and "MXM Legal;"[1]

b. McCroskey is a citizen of the State of California;

c. McCroskey Defendants' actions and inactions, as more fully described herein, are directed at consumers nationwide, including consumers in the State of California;

d. McCroskey Defendants operate websites that are freely accessible from California and target consumers in the State of California, which involves, *inter alia*, the repeated transmission of files over the Internet in, to, and out of the State of California;

e. Certain timeshare owners that have timeshare contracts with Plaintiffs are California residents;

f. McCroskey Defendants committed acts and torts which caused injury to Plaintiffs business in the State of California; and

g. McCroskey Defendants engaged in substantial and not isolated activity in the State of California.

**C.** <u>**Venue**</u>

24. Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. § 1391 because, as described herein, a substantial part of the events or omissions giving rise to this action occurred in this district, the McCroskey Defendant's principal place of business and home venue is the Central District of

---

[1] Because Miranda Dempsey, APLC and McCroskey conduct business under various fictitious business names, they are required to comply with California Business & Professions Code ("B&P Code") sections 17900 – 17930. To conduct business under a fictitious name, the person or company (the "Registrant") must file a Fictitious Business Name Statement ("FBNS") with the Clerk of the county in which the principal place of business is located. *See*, B&P Code §17910. Miranda Dempsey, APLC and McCroskey have failed to file any FBNS in Orange County, California for any "dba," as required by B&P Code §17910.

California, and the McCroskey Defendants' conduct giving rise to the claims set forth herein occurred in this district. In addition, upon information and belief, McCroskey Defendants have numerous customers in central California. Therefore, it is convenient for third-party witnesses to testify in this Court regarding the services they received from the McCroskey Defendants. Moreover, California has a general policy interest in protecting residents harmed by violations of California law by in-state actors such as the McCroskey Defendants.

### D. Conditions Precedent

25.   All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

### ALLEGATIONS OF FACT

***Wyndham's Timeshare Contracts***

26.   Individuals who purchase timeshare interests through Wyndham (the "Wyndham Owners") enter into written agreements with Wyndham. If a Wyndham Owner obtains financing for his or her purchase, the Wyndham Owner may also execute a promissory note (the purchase agreement and note, if applicable, are referred to herein as the "Timeshare Contracts").

27.   The Timeshare Contracts control the benefits and obligations of vacation ownership and the relationship between Wyndham and the Wyndham Owners, including, but not limited to, payment obligations.

***Folk and Wilson's Fraudulent Scheme through Pandora Marketing***

28.   After a four-day non-jury trial brought by another developer in the Southern District of Florida, the court found the following allegations at paragraphs 29 through 47, or variations thereof, to be facts regarding the business enterprise of Folk, Wilson, and Pandora Marketing. *See Bluegreen Vacations Unlimited, Inc.*, ECF No. 561 at 4-5; 7; 14; 17; 24-26.

29.     Pandora Marketing is a company based in California that offers "timeshare exit" services.

30.     Pandora Marketing is owned and operated by Folk and Wilson either directly or indirectly through entities that they own and/or control.

31.     Folk and Wilson are Pandora Marketing's final decision-makers for Timeshare Compliance's business decisions.

32.     Pandora Marketing advertises to timeshare owners the ability to terminate the owner's obligations under their timeshare contract.

33.     Pandora Marketing advertises that its process is "legal," even though it is not a law firm or registered with the California Bar as a lawyer referral service.

34.     Most of Folk, Wilson, and Pandora Marketing's potential customers, regardless of how they found out about the purported exit services, go through a sales presentation by a Pandora Marketing analyst.

35.     The analysts use scripts to deliver the sales presentations, such that the sales presentations are generally the same for each potential customer.

36.     Folk and Wilson have been personally involved in Pandora Marketing's marketing, including creating advertisements and sales scripts.

37.     Analysts inform potential timeshare owner customers during the sales presentation that an attorney that the owners separately retain will provide them with an exit from their timeshare obligations.

38.     The scripts also inform timeshare owners of the attorney's fee and that they will need to sign a retainer with the attorney to whom they are referred.

39.     In the sales presentations, analysts tell potential timeshare owner customers that an attorney will provide the desired timeshare contract cancellation and highlight attorneys as key to the "exit" process.

40.     Once a timeshare owner agrees to proceed with Pandora Marketing's services, the owner executes an agreement. Pandora Marketing executes a written agreement with each of its customers.

41.     Pandora Marketing specialists and analysts receive sales commissions for the timeshare owners who retain their services.

42.     However, Folk, Wilson, and Pandora Marketing themselves do not perform any function to obtain a cancellation or termination of a timeshare contract. Instead, after getting paid by the timeshare owners, Pandora Marketing refers its customers to attorneys to deliver the promised cancellation or termination, while Pandora Marketing acts as the liaison between the owner and the attorney.

43.     Pandora Marketing refers all of its customers to attorneys.

44.     Folk, Wilson, or Pandora Marketing's referral of the timeshare owner to the attorney is the sole means by which they attempt to make good on the promise to cancel a customer's timeshare contract.

45.     Statements to timeshare owners during sales presentations that the attorneys working with Pandora Marketing will get those owners out of their obligations with developers are false because the attorneys' actions are not what accomplishes an exit. Any "exit" is achieved by way of default—not the actions of the lawyers who receive referrals from Pandora Marketing.

46.     To effectuate these defaults, Pandora Marketing also makes representations to timeshare owners, including Wyndham Owners, that stopping payments on their Pandora Marketing will make the attorneys' process "faster," "quicker," or "easier," but these statements are false because the attorneys to which Pandora Marketing refers timeshare owners have no process that entitles an owner to cease payments.

47.     Thus, unbeknownst to the timeshare owners who purchase Folk, Wilson, or Pandora Marketing's services, they rely entirely on the owner defaulting on their timeshare loan to effectuate the promised "exit."

48.     This scheme, perpetuated by Folk and Wilson, has been adjudicated as fraudulent, deceptive, and ultimately unlawful by federal courts. *See e.g., Bluegreen Vacations Unlimited, Inc.*, ECF Nos. 437 and 561; *Wyndham Vacation Ownership, Inc.*

*et al. v. Slattery, Sobel & DeCamp, LLP, et al.*, Case No. 6:19-cv-1908-WWB-EJK (the "Florida Litigation"), ECF No. 734 and 1065.

### *Folk and Wilson's Continued Fraud through the Trust and Front Companies*

49.     Folk and Wilson's disregard for the judicial system is unrelenting and well-documented, making their persistence in carrying out the scheme—despite it being adjudicated as improper—unsurprising and inescapable.

50.     For example, on November 22, 2022, over a year after being defaulted and ordered to pay over $200,000 for willful discovery obstructions in the Florida Litigation, Folk and Wilson filed an "Affidavit of Fact" which contained two hundred and eighty-five paragraphs of bizarre assertions regarding the court, presiding judges, counsel, and third parties. *See Wyndham Vacation Ownership, Inc.*, 6:19-cv-1908-WWB-EJK, ECF No. 960.

51.     The Affidavit of Fact, which was ultimately struck in the Florida Litigation, was just the start to a "paper terrorism" tactic employed by Folk and Wilson, who voice similar ideology as so-called sovereign citizens.

52.     Thereafter, on January 11, 2023, Pandora Servicing, LLC (a Front Company and defendant in the Florida Litigation) declared Chapter 11 bankruptcy in the United States Bankruptcy Court of the Central District of California, *In Re: Pandora Servicing, LLC*, Case No. 8:23-bk-10051-SC (the "Bankruptcy Case"). Pandora Servicing filed the Affidavit of Fact (even though it was already stricken in the Florida Litigation) as a basis for the Bankruptcy Case, and also submitted supplemental affidavits that were just as frivolous and strange as their predecessor.

53.     Notably, during Pandora Servicing's meeting of creditors, Folk testified that the Bankruptcy Case was filed for the express purpose of preventing the court in the Florida Litigation from reaching its conclusion. Understandably, in May 2023, the bankruptcy court ruled that the Bankruptcy Case was filed in bad faith and dismissed it.

54.     Thereafter, following a bench trial in the Florida Litigation on Wyndham's claims against Pandora Marketing's co-defendants, Wyndham moved for entry of default

judgment and permanent injunction against Folk, Wilson, Pandora Marketing, and Pandora Servicing, LLC (together, "Pandora").

55.    Perhaps anticipating an unfavorable result in the Florida Litigation, two days before an evidentiary hearing on Wyndham's default judgment motion, Pandora filed a case against Wyndham frivolously alleging that the entry of defaults against Pandora were the result of *Wyndham's* misconduct. *See Pandora Marketing, LLC v. Wyndham Vacation Ownership, Inc.*, 6:23-cv-1513-WWB-EJK (the "Collateral Litigation") at ECF No. 1-1.

56.    The Collateral Litigation, which sought damages in the amount of any relief that may be awarded against Pandora in the Florida Litigation, is just another example of Pandora's complete disregard of any court authority and rules governing the legal profession.

57.    After the evidentiary hearing on Wyndham's default judgment motion, Magistrate Judge Embry J. Kidd entered an Amended Report & Recommendation (the "R&R") in the Florida Litigation, recommending the entry of default judgment against Pandora as to certain counts of the operative complaint, entry of a permanent injunction against Pandora, and a $16,231,197.88 disgorgement award in Wyndham's favor, finding such relief to be necessary because Pandora has "caused irreparable harm to [Wyndham] by using false and misleading advertising, and charging fees, to entice Wyndham Owners into wrongfully breaching their timeshare contracts," and such unlawful conduct is an "**ongoing concern**." *See Wyndham Vacation Ownership, Inc.*, 6:19-cv-1908-WWB-EJK, ECF No. 1065 at 4, 12-14 (emphasis added).

58.    Even after the R&R, however, Folk and Wilson's incessant defiance of the judicial system continued. Nearly contemporaneous with the filing of the Collateral Litigation, from August 29, 2023 through September 15, 2023, the Trust filed at least thirty-one UCC liens against Wyndham (the "Liens") and other timeshare developers with secretaries of state across the country, claiming a $205 million-dollar debt owed by Wyndham and the other developers. The claimed debt was solely premised upon the

stricken Affidavit of Fact and the affidavits used as the basis of the bad faith Bankruptcy Case.

59.     Then, on November 4, 2023, Pandora publicly issued a press release which touted the Liens as filed "extra-judicially" and intimated that their intention was to influence Wyndham's securities disclosures and stock price.[2] Such unrelenting desire to harm Wyndham's brand most recently culminated into the Trust threatening Wyndham, in written correspondence, with an involuntary bankruptcy should it fail to pay the illusory $205 million-dollar debt. *See Wyndham Vacation Ownership, Inc.*, 6:19-cv-1908-WWB-EJK, ECF No. 1094-1.

60.     Pandora's not-so-subtle attempts to harm Wyndham's brand at the expense of the sanctity of the federal court system highlights how far Folk, Wilson, and the Front Companies are from comporting themselves in a manner expected from one who refers consumers of legal services in the State of California.

61.     As part of their continued attempts to stall their inevitable fate, Pandora Marketing relinquished the "Timeshare Compliance" fictious business name on or about December 2023.

62.     Then, on January 31, 2024, Pandora Marketing declared Chapter 11 bankruptcy in the United States Bankruptcy Court in the District of Wyoming, *In Re: Pandora Marketing, LLC*, Case No. 24-20022. During such bankruptcy proceedings, an attorney for the U.S. Trustee's Office communicated to the Bankruptcy Court that certain testimony raised concerns with Pandora Marketing's eligibility to proceed in bankruptcy court and could lead to potential criminal implications. *See Wyndham Vacation Ownership, Inc.*, 6:19-cv-1908-WWB-EJK at ECF No. 80, time stamp 15:57-16:23.

---

[2] *Collaborative Administrative Trust (CAT) (Managing Member of Timeshare Compliance) Records $205M Lien Against Major Timeshare Developers, PR NEWSWIRE* (Nov. 4, 2023), https://www.prnewswire.com/news-releases/collaborative-administrative-trust-cat-managing-member-of-timeshare-compliance-records-205m-lien-against-major-timeshare-developers-301977799.html (last visited May 5, 2024).

**COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE § 6155**                     - 12 -

63.    The bankruptcy proceeding did not halt Folk and Wilson's scheme through Pandora Marketing, however, as on February 27, 2024, Pandora Marketing issued a press release[3] stating, in relevant part:

> Pandora Marketing, LLC … entered into Chapter 11 Reorganization on January 31, 2024 … During this transition, Pandora Marketing will continue its commitment to customers with their timeshare exit goals …

> **Senior leadership has long determined that Pandora can complete chapter 11 without disrupting operations**, and the entire team has already implemented its plan to service its customers while handling go-forward commitments to its employees and vendors. "The Company remains steadfast in its commitment to deliver the same innovative solutions that empower our customers to successfully resolve their timeshare contract," said Folk.

> "**We have all been working diligently since filing [for chapter 11] to improve our cash position by scaling down, getting lean, and focusing on our most impactful business lines**," said Bo Wilson, Co-Trustee. "Our problem was never a matter of sales…"

PR NEWSWIRE, *supra* n.2 (emphasis added).

64.    Per the website at TimeshareCompliance.com, Savi Collaborative, LLC, a company owned by Wilson (and, upon information and belief, by Folk as well), now operates under the business name Timeshare Compliance, and performs its services in conjunction with other companies also owned by Wilson and/or Folk, such as Light On Marketing, LLC.

65.    Moreover, the website, now operated by Savi Collaborative, LLC, advertises the same services that were advertised when Pandora Marketing operated it. *Compare* the TimeshareCompliance.com website when operated by Pandora Marketing at Exhibit 1, *with* the TimeshareCompliance.com website when operated by Savi Collaborative, LLC at Exhibit 2.

---

[3] *Pandora Marketing LLC Continues to Serve Customers During Voluntary Chapter 11 Reorganization, PR NEWSWIRE* (Feb. 27, 2024), https://www.prnewswire.com/news-releases/-pandora-marketing-llc-continues-to-serve-customers-during-voluntary-chapter-11-reorganization--302073260.html (last visited May 5, 2024).

**COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE § 6155**          - 13 -

66.    Tellingly, during a recent deposition in the Pandora Marketing bankruptcy case, the Director of Administration of Pandora Marketing confirmed that employees that worked for Pandora Marketing when it was doing business as Timeshare Compliance continue to work in the same role for Savi Collaborative while *that* company does business as Timeshare Compliance.

67.    Regardless of which Folk and/or Wilson business has assumed the Timeshare Compliance name, the website continues to advertise the same services that underlie the scheme:



*See How To Cancel My Wyndham Timeshare*, TIMESHARE COMPLIANCE, https://timesharecompliance.com/how-to-cancel-my-wyndham-timeshare/ (last visited May 6, 2024).

68.    Thus, at present, the unlawful scheme, which relies on lawyer referrals to survive, continues in the State of California.

**_Folk and Wilson's Business Model is Governed by Bus. & Prof. Code § 6155._**

69.    A referral under Section 6155 occurs when an entity directs or sends a potential client to an attorney. Section 6155 requires no more for a service to fall within its ambit.

70.    Section 6155 provides that an entity may not operate as a lawyer referral service unless it is registered with the State Bar, and is operated in conformity with minimum standards for a lawyer referral service established by the State Bar. *See* Cal. Bus. & Prof. Code § 6155(a).

71.   Section 6155 specifically provides that the State Bar "shall formulate and enforce rules and regulations for carrying out this section ...," which includes requiring a lawyer referral service to "register with the State Bar and obtain from the State Bar a certificate of compliance with the minimum standards for lawyer referral services." *Id.* at subd. (f)(2).

72.   A lawyer referral service is deemed registered with the State Bar when it has been certified, and the Rules of the State Bar provide that certification is mandatory for a lawyer referral service. *See* Rules of the State Bar, Title 3, Div. 5, Art. I, Rule 3.800 *et seq.* ("An individual or organization that refers prospective clients to attorneys must comply with minimum standards, and be certified by the State Bar of California as a lawyer referral service ...").

73.   Folk, Wilson, the Trust, and the Front Companies are therefore required to obtain certification from the State Bar showing compliance with the minimum standards to operate as a lawyer referral service.

74.   Folk, Wilson, the Trust, and the Front Companies are not registered with the State Bar and are not operated in conformity with minimum standards established by the State Bar for a lawyer referral service.

### *The McCroskey Defendants' Involvement in the Scheme*

75.   McCroskey has been licensed to practice in California for approximately twenty-seven (27) years.

76.   McCroskey is not licensed to practice in any other state.

77.   Despite McCroskey being licensed to practice law solely in California, she purports to represent timeshare owners nationwide.

78.   Between 2003 and 2016, McCroskey solely practiced in the areas of criminal and professional license defense, with limited exceptions.

79.   In 2016, however, Michael Santos ("Santos") approached McCroskey to understand her interest in and capacity to represent timeshare owners.

80.     Santos, who was a partial owner of Pandora Marketing and Registered Agent for the business, recently reached a settlement with the Federal Trade Commission for charges arising from his participation, control, and illegal benefit from the deceptive marketing of the "Sanctuary Belize" real estate development in remote southern Belize which took in more than $120 million, primarily from American consumers. The order settling the charges against Santos provides strong injunctive relief commensurate with his alleged role within the scheme, particularly his direct involvement in the scheme's deceptive marketing practices. *See Ten Individual and Corporate Defendants Settle FTC Charges that They Participated in, Controlled, or Benefitted from the Sanctuary Belize Real Estate Scam*, FTC.GOV, https://www.ftc.gov/news-events/news/press-releases/2020/12/ten-individual-corporate-defendants-settle-ftc-charges-they-participated-controlled-or-benefitted (last visited May 5, 2024).

81.     After McCroskey expressed interest in representing timeshare owners to such fraudster, Santos introduced McCroskey to Folk and Wilson.

82.     At the end of 2016, McCroskey met with Folk and Wilson in person at the office of Pandora Marketing.

83.     The purpose of McCroskey's initial meeting with Folk and Wilson was to form a business arrangement in which Folk and Wilson, either individually or through one of the entities they had an interest in, would refer an individual who sought to exit their timeshare to McCroskey.

84.     Specifically, Wilson and Folk sought to refer individuals who already had a client relationship with Wilson and/or Folk, either individually or through one of the entities they had an interest in (including but not limited to Pandora Marketing), to McCroskey to effectuate the timeshare exit scheme described above.

85.     During the initial meetings and later negotiations between McCroskey, Wilson, and Folk, the McCroskey Defendants agreed to receive a referral fee for each timeshare owner referred to them in the amount of $600, which was later increased to $750.

86.    The McCroskey Defendants continue to accept a flat fee in exchange for accepting Folk, Wilson, and the Front Companies' referrals.

87.    The McCroskey Defendants collect the purported lawyer fee from Wyndham Owners, although they have collected fees directly from Pandora Marketing as well.

88.    In return for a flat fee of several hundred dollars, the McCroskey Defendants are expected to do nothing more than lend their name and signature to a form letter sent to Wyndham or, at best, ghostwrite such letters.

89.    These letters are also designed to cut off any communication between Wyndham and the Wyndham Owners, and constitutes the entirety of any "service" the McCroskey Defendants perform.

90.    By attempting to cut off communication, the McCroskey Defendants facilitate and encourage the owner's non-payment, as the owner may no longer receive notifications of their delinquency.

91.    The submission of the form letter also serves as a false validation of the illusory service, providing the impression that monies paid to the Front Companies and the McCroskey Defendants have resulted in some legal action.

92.    But, subsequent to the referral of the Wyndham Owners to the McCroskey Defendants, it is not the McCroskey Defendants' practice to provide any litigation services to such Wyndham Owners. Indeed, McCroskey has never filed a lawsuit or arbitration on behalf of a Wyndham Owner.

93.    In fact, McCroskey's current advertisements through MXM Legal, which are annexed as Exhibit 3, confirm it is not the intent of the McCroskey Defendants to engage in *any* litigation services.

94.    Nor would engagement for such litigation services be reasonably expected based on the amount of the fee paid to the McCroskey Defendants.

95.    The deceptive nature of the McCroskey Defendants' conduct, which commences upon receipt of an unlawful referral, is most evident through the McCroskey

Defendants' ghostwritten letters by which they exploit the trust between Wyndham and its customers.

96.     Such letters and the McCroskey Defendants' communications with Wyndham employees outside of the legal department on behalf of their clients, as shown in the emails annexed here as Composite Exhibit 4, further confirms that the Wyndham Owners unjustifiably pay thousands of dollars to Folk, Wilson, the Front Companies, and the McCroskey Defendants for a service that does not require the expertise of a legal professional.

97.     In granting summary judgment in favor of Wyndham in a case brought against Folk, Wilson, and Pandora Marketing—as well as other lawyers and law firms engaged in the unlawful scheme described herein—United States District Judge Wendy W. Berger elaborated on the integral role acceptance of referrals plays in the scheme, stating:

> There is evidence that Lawyer Defendants were crucial to Marketing Defendants' exit strategy because without their services, the exit strategy represented to the owners failed. Indeed, Marketing Defendants advertised in their sales pitch that the owners would be out of their time shares once Lawyer Defendants mailed their letters to the developers. Lawyer Defendants argue that accepting referrals did not make Marketing Defendants' false advertising possible because Marketing Defendants could just refer to another lawyer. However, that appears to be the point. ***If no lawyer agreed to accept referrals from Marketing Defendants, their false advertising fails***. And Lawyer Defendants did in fact accept their referrals despite understanding Marketing Defendants' exit strategy.

*Wyndham Vacation Ownership, Inc.*, 6:19-cv-1908-WWB-EJK, ECF No. 734 at 11-12 (emphasis added).

98.     Thus, the McCroskey Defendants are the bloodline of Folk and Wilson's unlawful scheme as the "entire scheme would fall short without the services" of lawyers and law firms. *Bluegreen Vacations Unlimited, Inc.*, ECF No. 437 at 19.

99.     Tellingly, timeshare owners who hired Pandora Marketing for services have confirmed that the potential of attorney representation or services encouraged them to

purchase Folk, Wilson, and Pandora Marketing's services and gave them the confidence to cease payments on their timeshare contracts. *See id.*, ECF No. 561 at 18-19.

100.  Through this egregious abuse of the community's trust of those within the legal profession, the McCroskey Defendants have engaged in a referral relationship that benefits only themselves and its business partners, as the "cancellation" services they purport to provide are illusory, and timeshare owners often do not even realize that they have been scammed until after the damage is done.

101.  Section 6155 prohibits an attorney from accepting referrals of…potential clients from a non-attorney unless the non-attorney is: (1) "registered with the State Bar of California and…is operated in conformity with minimum standards for a lawyer referral service established by the State Bar…"; **and** (2) "[t]he combined charges to the potential client by the referral service and the attorney to whom the potential client is referred do not exceed the total cost that the client would normally pay if no referral service were involved."  Cal. Bus. & Prof. Code § 6155(a).

102.  The McCroskey Defendants' acceptance of referrals from Pandora Marketing, Folk, Wilson, and the Front Companies is unlawful under Section 6155 because such non-attorneys are neither registered with the State Bar of California nor operated in conformity with minimum standards for a lawyer referral service established by the State Bar.

103.  The McCroskey Defendants further violate Section 6155 because each Wyndham Owner pays Pandora Marketing thousands of dollars and pays the McCroskey Defendants additional hundreds of dollars to essentially breach a timeshare contract that the Wyndham Owner could have breached on his or her own, for free.

104.  Section 6155 was enacted to protect the consuming public such that its violation will likely harm the public.

105.  The McCroskey Defendants actions harm the consumers of legal services, such as timeshare owners, because the timeshare owners are forced to make uninformed purchasing decisions as they are pulled into an unlawful referral scheme without any of

**COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE § 6155**                - 19 -

the required protections put in place to ensure that they receive fair and honest services. Rather, timeshare owners who may not have encountered the McCroskey Defendants should the legal obligation to work with a licensed referral service have been obeyed (or may not have chosen the McCroskey Defendants' services if they were fully informed of their pecuniary interest in the referral) are exploited for monetary gain.

106.   Moreover, these timeshare owners do not receive the communication and independent professional judgment they are entitled to because the McCroskey Defendants outsource their communications with owners to the Front Companies or otherwise allow those non-attorneys to influence legal decisions. Such timeshare owners pay large sums to the Front Companies without knowledge of the referral scheme with the McCroskey Defendants and without the appropriate referral program protections in place. As such, the McCroskey Defendants' acceptance of referrals in violation of Section 6155 cause an injury or detriment to consumers of legal services.

107.   The complaints filed with the Better Business Bureau (BBB) against MXM Legal, which are annexed as Exhibit 5, confirm the involvement of the McCroskey Defendants in the scheme and the resulting harm to consumers of purported legal services.

108.   This harm is ongoing, as exhibited from the following BBB complaint against MXM Legal:



*See* Exhibit 5.

109.   The McCroskey Defendants' violations of Section 6155 also unfairly harm competition with other lawyers in the State of California who abide by their legal and professional obligations yet lose business to the McCroskey Defendants.

110.   Wyndham is harmed by the McCroskey Defendants' acceptance of referrals from Folk, Wilson, and the Front Companies because the cumulative effect of the relationship is a mechanism by which the Front Companies' false statements may be given a semblance of legitimacy for the ultimate goal of receiving payment from Wyndham Owners who, pursuant to the Front Companies' false statements, stop making their payments to Wyndham.

111.   Moreover, "timeshare exit companies" could not exist if there were no timeshare interests. Wyndham is a timeshare developer. Wyndham has an interest in each timeshare contract and associated loan. By its nature, the McCroskey Defendants' work for timeshare exit companies is directed solely at customers of timeshare developers, such as Wyndham. Wyndham's interest in curbing the McCroskey Defendants' conduct, which is directed at Wyndham, is that beyond of the general public.

112.   Folk, Wilson, the Front Companies, and the McCroskey Defendants have gained a customer base comprised of Wyndham customers via an unlawful referral scheme and unethical practices. Wyndham has an interest that businesses associated with timeshares, in any capacity, are not scams. Despite her experience, McCroskey has actively chosen to ignore her ethical obligations and shown a reckless disregard regarding the same. Such unfair practices have given her access to the business of Wyndham's customers.

113.   Additionally, Wyndham also has a right to communicate with its customers, particularly when they are trying to get out of a Timeshare Contract. The McCroskey Defendants' act of ghost-writing letters and purporting to be Wyndham Owners prevents Wyndham from appreciating the magnitude of the McCroskey Defendants' unlawful conduct.

114.   Further, to the extent the conduct of McCroskey Defendants causes or contributes to a timeshare owner ceasing payments to Wyndham, Wyndham suffers an unquantifiable monetary and brand damage.

115.   Notably, **this court** has already permanently restrained and enjoined the McCroskey Defendants from, *inter alia*:

    a.   marketing to, soliciting, or in any way communicating with any timeshare owner that owns a timeshare interest from timeshare developer Diamond Resorts ("Diamond Owner");

    b.   preparing or otherwise assisting any other person or entity to prepare, whether directly or indirectly, any correspondence directed to Diamond Resorts on behalf of Diamond Owner;

    c.   accepting the referral of any Diamond Owner from any persons or entities who advertise, market, or solicit to timeshare owners for exit services, for the purposes of providing timeshare cancellation services;

    d.   participating in any form in the solicitation of Diamond Owners concerning the provision of timeshare cancellation services;

    e.   contacting and/or having any communication, written or otherwise, with any Diamond employee for any purpose related to obtaining contact information for Diamond Owners in relation to the provision of timeshare cancellation services; and/or

    f.   maintaining an ownership interest in any business entity, including a professional law corporation, that is providing timeshare cancellation services to Diamond Owners.

*See Diamond Resorts U.S. Collection Development, LLC, et al., v. Pandora Marketing LLC, et al.*, Case No.: 2:20-cv-05486-DSF-ADS, ECF No. 582 (C.D. Cal. Feb. 11, 2022) (the "Diamond Injunction").

116. Although limited to the actions against Diamond Resorts by the McCroskey Defendants, the Diamond Injunction permanently prohibits the McCroskey Defendants' unlawful legal practices that form the basis of this action.

117. Since the Diamond Injunction, however, the McCroskey Defendants have, upon information and belief, accepted unlawful referrals that have culminated in the representation of at least around 400 Wyndham Owners, causing injury to Wyndham and Wyndham Owners as a result of such representations which were initiated by illegalities.

118. The McCroskey Defendants continue advertising their timeshare exit services, which rely on the unlawful referrals described herein.



119. *See Home*, MXM Legal, https://mxm.legal/ (last visited May 6, 2024).There is a risk of irreparable harm because the McCroskey Defendants continue to engage in timeshare exit services with Folk, Wilson, the Front Companies, and similar exit companies that are not registered referral services and have otherwise violated referral protections.

120. It is evident that neither Folk, Wilson, the Trust, nor the Front Companies have any intention in comporting themselves in a manner consistent within the minimum standards of a lawyer referral service in the State of California. It is equally evident that the McCroskey Defendants have no intent of operating their business within their legal and professional obligations. Thus, the harm explained above remains persistent and must be arrested.

**FIRST CAUSE OF ACTION**

Violation of Business & Professions Code § 6155

(Against McCroskey Defendants)

121.   Plaintiff realleges and incorporates by reference the allegations set forth in each preceding paragraphs of this complaint.

122.   Business and Professions Code § 6155 governs the ownership, operation, formulation, and enforcement of rules, regulations and fees related to the operation of lawyer referral services in the State of California.

123.   Folk and Wilson are individuals who operate businesses for the direct or indirect purpose, in whole or in part, of referring potential clients to attorneys, including the McCroskey Defendants.

124.   The Front Companies are entities that advertise legal services and operate for the direct or indirect purpose of referring potential clients to attorneys, including the McCroskey Defendants.

125.   At all relevant times, Folk, Wilson, and the Front Companies failed to register their services as required pursuant to Business and Professions Code § 6155.

126.   At all relevant times, neither Folk, Wilson, nor the Front Companies operated in conformity with minimum standards for lawyer referral services established by the California State Bar.

127.   At all relevant times, the McCroskey Defendants accepted referrals from Folk, Wilson, and/or the Front Companies.

128.   The McCroskey Defendants' acceptance of referrals from these unregistered lawyer referral sources is unlawful under Section 6155.

129.   At all relevant times, the combined charges to Wyndham Owners by Folk, Wilson, the Front Companies, and the McCroskey Defendants exceeded the total cost that the Wyndham Owner would normally pay if no referral service were involved.

130.   The McCroskey Defendants' conduct harms Wyndham, attorneys, and consumers of legal services.

131.   Business and Professions Code § 6155(e) provides that any person may enjoin a violation of Section 6155.

132.   Plaintiff seeks to enjoin McCroskey Defendants from accepting referrals from Folk, Wilson, the Front Companies, including but not limited to any entity doing business as "Timeshare Compliance," and any other referral service in the State of California until and unless such referral services have complied with Business and Professions Code § 6155.

## **PRAYER**

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment in Plaintiffs' favor for injunctive relief to enjoin McCroskey Defendants from accepting referrals from Folk, Wilson, the Front Companies, including but not limited to any entity doing business as "Timeshare Compliance," and any other referral service in the State of California until and unless such referral services have complied with Business and Professions Code § 6155.

2. Costs of suit.

3. Attorney's fees under CCP § 1021.5 and/or California state law; and

4. Such other relief that the Court considers proper.

DATED:  August 9, 2024

_____
BEN SUTER
KEESAL YOUNG & LOGAN

ALFRED J. BENNINGTON, JR.
(*seeking Pro Hac Vice admission*)
GLENNYS ORTEGA RUBIN
(*seeking Pro Hac Vice admission*)
SHUTTS & BOWEN LLP

Attorneys for Plaintiffs WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM VACATION RESORTS, INC., and WYNDHAM RESORT DEVELOPMENT CORPORATION

**<u>EXHIBIT 1</u>**

The Wayback Machine - https://web.archive.org/web/20221027200245/https://timesharecompliance.com/

**Tired of costly monthly maintenance fees? We can help!**

# Leaders in Timeshare Debt Cancellations

# 1-855-947-5064

**Anthony Becht**
NFL Player & Timeshare Compliance Client



**4.5 Star Rating**



**4.4 Star Rating**



## A+ rating with BBB

**The #1 Timeshare Exit Company in the Nation!**

# Our timeshare exit strategy can help you legally terminate your timeshare contract today!

Hello and welcome to Timeshare Compliance.  As the preeminent Timeshare Exit company in the nation, we pride ourselves in delivering outstanding customer service in our efforts to advocate for a legal timeshare exit plan with your developer. As former timeshare industry Executives, we understand intimately the legal process of successfully exiting a timeshare contract.

If you feel as though you were misrepresented by your timeshare developer by way of high-pressure sales tactics or rising maintenance fees, we could assist you in a legal timeshare exit plan.  As 9 year veterans in the timeshare exit business, we encourage you to explore the many reasons why timeshare owners, just like you, are choosing Timeshare Compliance to assist with their legal timeshare exit.



## Timeshare Cancellation or Timeshare Exit Services?

Understanding the difference between timeshare cancellation and timeshare exit is extremely important.  A "timeshare cancellation" is the rescission period your timeshare developer allows you to legally cancel your timeshare contract.  This can vary from state to state and usually within a short window of you signing your initial contract.  On the other hand, a "timeshare exit" is a legal process whereby a timeshare owner was misrepresented by a developer and is looking for a legal way to terminate their timeshare liabilities.  That is where our timeshare exit services can can help you!

## Looking for the best Timeshare Exit Attorney?

If you are looking for a legal way to exit your unwanted timeshare contract, seeking help from an experienced timeshare exit attorney could be your best option.  There are many timeshare exit scams and timeshare exit companies claiming to be experts in the field – usually offering "timeshare cancellation guarantees". Be aware of those companies.  Do your due diligence on timeshare exit professionals to ensure that they have a proven track record of terminating timeshare contracts.  Reading client testimonials can also help you to determine whether of not they are the best fit for you.

## Want to exit your unwanted timeshare contract legally?

The legal process of exiting (often incorrectly referred to as "timeshare cancellation") your timeshare contract can be a long and daunting process. If you were misrepresented by your developer, or your monthly maintenance fees have increased unexpectedly, you may have legal grounds to terminate your timeshare. You can either choose to try and terminate your contract by yourself, or you can hire experienced timeshare exit professionals, like us. We can help you with a legal timeshare exit by communicating with your developer directly, and implementing an effective timeshare exit plan.



We can help you exit your Timeshare today!

# 6 Reasons why you should consider us.





## 9 YEARS IN BUSINESS

As founders of Timeshare Compliance, and former timeshare industry executives, Bo and Rich bring a wealth of experience to the timeshare exit industry. They embarked on this timeshare exit journey to help advocate for those who felt pressured into their timeshare contracts. Under their guidance and trusted leadership, Timeshare Compliance has helped free thousands of clients from their unwanted timeshare liabilities.



# 2

## PROVEN TIMESHARE EXIT STRATEGY

When choosing a timeshare exit company to help you with a legal timeshare resolution, just remember that experience matters. For 9 years Timeshare Compliance has demonstrated to be a reliable and trustworthy timeshare exit advocacy partner. Our proven legal timeshare resolution process has helped many timeshare owners put an end to their unwanted timeshare contract liabilities.



# 3

## YES, WE USE ATTORNEYS

At Timeshare Compliance we only use experienced attorneys to help represent you in a legal timeshare exit resolution. In doing so, it not only ensures a smooth and seamless timeshare cancellation process, but puts an immediate end to any potential harassment on the part of your timeshare developer.





## BBB ACCREDITED BUSINESS

As preeminent leaders of legal timeshare exit services, we have maintained an impeccable reputation by delivering on what we promise.  We pride ourselves on our A+ Rating and Accreditation with the BBB (Better Business Bureau), and while we acknowledge we can't help everyone, we certainly strive for excellence in helping those we can.





## HUNDREDS OF HAPPY CLIENTS

Hundreds of happy customer cannot be wrong.  Customer reviews speak volumes for a business and the services they perform.  For this reason we strive to maintain the highest level of customer service throughout your timeshare exit process with us. We encourage you to explore our client reviews from trusted sources like Trustpilot, Google Reviews, and the Better Business Bureau.



# 6

## A WINNING TEAM BEHIND US

We recognize that our success lies in the hands of our staff.  We acknowledge this and are privileged to have such a diverse group of professionals that are friendly, courteous, and exceptional at what they do. Our entire team of Specialists, Case Managers and Client Experience Specialists, spend hours gathering information and advocating on your behalf, and we are grateful knowing that they have your best interest at heart.

## Client Testimonials



John Roebuck

*Lieutenant in Department of Justice*
Yukon, OK





**Anthony Becht**
*Former NFL player & Timeshare Compliance client*

# As seen on...











Let's get started on your timeshare exit plan

# What are the next steps?

## 1

### FILL OUT THE FORM BELOW

Simply fill out the form below and one of our knowledgeable specialists will immediately contact you to discuss your situation. Alternatively, feel free to call us if you prefer.

## 2

### LET'S DISCUSS YOUR SITUATION

It's important that we understand your situation and the reasons why you want to exit your timeshare. We also need to gather information from you to allow us to establish if we have a solid case in your defense.

## 3

### INITIATE AN EXIT PLAN, AND GET YOU OUT

Once we have gathered the required intel about your situation, and you feel comfortable moving forward with us, we will commence on your timeshare exit plan, while ensuring an open line of communication.



## TIMESHARE COMPLIANCE

Subsidiary of Pandora Marketing, LLC

# CONTACT US TODAY
# to schedule your free no obligation consultation!

✔ **Were you misrepresented by your developer?**

✔ **Are your Maintenance Fees constantly increasing?**

✔ **Were you pressured into your timeshare contract?**

| First Name |
| --- |

| Last Name |
| --- |

| Phone |
| --- |

| Email |
| --- |

| Zip Code |
| --- |

Timeshare Developer:

| Select Your Developer |
| --- |

Mortgage Debt Amount:

| Select Debt Amount |
| --- |

Annual Maintenance Fees:

| Select Annual Amount |
| --- |

**SUBMIT REQUEST**

* By providing my contact information I am giving Pandora Marketing LLC, DBA Timeshare Compliance (TimeshareCompliance.com) permission to contact me about this and future offers using the information provided. I am providing Pandora Marketing LLC, DBA Timeshare Compliance and third parties, consent to contact me through emails, calls and text messages to my wireless telephone numbers, and I understand contact may also include but not limited to the use of an automated dialing device and prerecorded messages. I understand that my permission described

herein overrides my listing on any state or federal Do Not Call registry and any prior listing on the Do Not Call registry of the companies listed above. I acknowledge that this consent may only be revoked by prior written notice to Pandora Marketing LLC at 26970 Aliso Viejo Pkwy, Suite 150, Aliso Viejo, CA 92656.

# For a FREE no-obligation consultation
# call us today at 855-947-5064

Could not connect to the reCAPTCHA service. Please check your internet connection and reload to get a reCAPTCHA challenge.

# EXHIBIT 2

 


TIMESHARE
COMPLIANCE™
Your Vacation. Your Way.

HOME    PROCESS    FAQS    REVIEWS    ABOUT US    TEAM    CONTACT    BLOG    

# WE CAN HELP YOU WITH THE BURDEN OF YOUR TIMESHARE.
## THERE IS A WAY OUT.



*We have a wealth of experience on both sides of the timeshare industry – more than anyone in the timeshare resolution business. We know the tricks of the trade and the proven strategies that work to get you the assistance you need. With our help, you could be the next success story and join thousands of happy clients!*

## CALL: 855-947-5064

### Schedule your appointment today!

# TIMESHARE FREEDOM STARTS RIGHT HERE



First Name



## WERE YOU MISLED BY YOUR TIMESHARE DEVELOPER?

• **Developer Misrepresentation**
• **Unethical Sales Practices**
• **High-Pressure Sales Tactics**
• **No Reservation Dates Available**

Developer misrepresentation is not uncommon.  We can help you terminate your timeshare contract if you legitimately feel as though you were taken advantage of by your timeshare developer.

First Name

Last Name

Phone

Email

Zip Code

Select Timeshare Developer

Select Mortgage Amount

Select Maintenance Fees

How Did You Hear About Us?

**SUBMIT REQUEST**

* By submitting your information, you agree to our Privacy Policy. By providing your contact information, you acknowledge that you are granting Savi Collaborative, LLC DBA TimeshareCompliance.com permission to contact you about this and future offers using the information provided. By submitting this form, you also consent to Savi Collaborative, LLC DBA Timeshare Compliance, and third parties (Light On Marketing, LLC dba Timeshare Contract Resolution), contacting you via email, phone and text messages (SMS or MMS) to your telephone number(s), and you expressly acknowledge and understand that such contact may also include, without limitation, the use of an automated dialing device and/or prerecorded messages.

## TERMINATE YOUR TIMESHARE CONTRACT WITH THE PROS!





**Anthony Becht**
*Former NFL player & Timeshare Compliance client*

# RECENT CLIENT TESTIMONIALS



*"We were locked into a timeshare we did not want to be in, so we turned to Timeshare Compliance to help us get out of it. They worked hard right from the start and didn't stop until we were free from this burden. We would recommend Timeshare Compliance to anyone who gets stuck in a timeshare and wants to get out."*

**Larry T – February 27, 2024**



*"Last year my wife and I were having problems paying our Timeshare note and looking for ways to get out of it. We checked with some lawyers and they said it would be hard if not impossible to do (very expensive). We received a phone call from Timeshare Compliance and they explained to us that it could be done. They were very helpful to us and we used them. They said it would take 1 year to 18 months to complete Timeshare Compliance did such a good job it was completed in less than 6 months."*

**Thomas M – January 4, 2024**

# CLIENT REVIEW





John Roebuck
*Yukon, Oklahoma*



Rating the best Timeshare Exit company!

# WHAT MAKES US DIFFERENT!



### 10 YEARS IN BUSINESS

As former timeshare industry executives, our company brings a wealth of experience to the timeshare exit industry. We chose to embarked on this journey to help advocate for those who were lied to or pressured into their timeshare contract.



### PROVEN EXIT STRATEGY

For 10 years we have demonstrated to be a formidable timeshare exit partner. Our experience and timeshare exit process has helped many timeshare owners put an end to their unwanted timeshare contract liabilities.



### YES, WE USE ATTORNEYS

Our network of attorneys can help represent you in a timeshare exit resolution. This ensures a seamless timeshare exit process and puts an end to any harassment on the part of your timeshare developer.













## BBB ACCREDITED

As the leader in timeshare exit services, we pride ourselves on our A+ Rating with the BBB (Better Business Bureau). While we acknowledge we can't help everyone, we strive for excellence in helping those we can.

## HAPPY CLIENTS

Hundreds of happy customer cannot be wrong.  Customer reviews speak volumes for a business and the services they perform.  We strive to maintain the highest level of service throughout your timeshare exit process with us.

## A WINNING TEAM

We recognize that our success lies in the hands of our staff.  We acknowledge this and are privileged to have such a diverse group of professionals that are friendly, courteous, and exceptional at what they do.

### Customer Reviews

# WHAT OUR CLIENTS THINK OF US!









**4.3** Out of 5 Stars

Overall rating of 28 1st-party reviews

| | | |
|---|---|---|
| 5 Stars | ████████ | 21 |
| 4 Stars | █ | 3 |
| 3 Stars | █ | 2 |
| 2 Stars | | 0 |
| 1 Star | █ | 2 |

 View Filters ∧



★★★★★ 5 out of 5 stars

Daerich Orrenst - April 18, 2024

Very helpful. Mr. Diaz was very courteous and answered all my



★★★★★ 5 out of 5 stars

Maggie Witter - April 5, 2024

Kate was wonderful and attentive in a resolution. She was quick

★★★★★ 5 out of 5 stars



**Daerich Orrenst - April 18, 2024**
Very helpful. Mr. Diaz was very courteous and answered all my questions. If I didn't understand something, he explained it in way for me to understand. Great Job!

★★★★★ 5 out of 5 stars

**Fred & Rosa L. - April 5, 2024**
Love what you did gave us peace of mind and will do this again we told friends about you that are struggling too

★★★★★ 5 out of 5 stars



**Lina Fruzzetti - April 1, 2024**
The experience of working with the company was amazing, although it took a while we did achieve what we set out to accomplish. The attention, and the ease getting us off the Hilton timeshare was not stressful in fact they remove the stress we were experiencing. Thank you and thanks again

★★★★★ 5 out of 5 stars

**Donna P. - March 25, 2024**
Very good

> **Response: Lindsley L. - March 26, 2024**
> Thank you so much Donna! Would you please post your honest review on one of the links: Google, BBB - so we can send you a thank you gift? Timeshare Compliance Team info@tscompliance.com

★★★★☆ 4 out of 5 stars



**Melissa Rhoden - March 6, 2024**
Timeshare Compliance did what they promised. They were able to retract our contract. Even through Covid they handled our case diligently. They are responsive, professional, and impromptu. If you need to exit your timeshare, please reach out to timeshare compliance, they will definitely help you.

> **Response from the owner - March 6, 2024**
> Melissa! You are the best! Happy customers are what keeps us going helping wonderful people like you break free from timeshare burden. We will reach out to send you a thank you!

★★★★★ 5 out of 5 stars



**Maggie Witter - April 5, 2024**
Kate was wonderful and attentive in a resolution. She was quick in response and helped me every step into canceling time share. I'm grateful for this service.

★★★★☆ 4 out of 5 stars



**Jerome T - April 4, 2024**
My two contracts were cancelled but I have not received anything showing that. In addition the process toke longer thanpromised

★★★★★ 5 out of 5 stars



**Rod Warner - April 1, 2024**
It took quite a long time, but Timeshare Comp delivered as promised. Duration was prob due to the process involved. They were supportive along the way.

★★★★★



**Carl Cole - M**
it was easy to
timeshare.wh
through the p

> **Respons**
> Thank you
> nice to wr
> others wh
> we can he
> a proper t
> Enjoy you

★★★★



**Robert Tonr**
Timeshare C
problematic t

> **Respons**
> Robert, T
> to assist y
> from time
> info@tsco
> gift.

 1  2  3  4  ...  25 

Powered by GatherUp

# TIMESHARE ADVOCACY NEWS

### Timeshare Compliance (aka Collaborative Administrative Trust) Records $205M Lien Against Major Timeshare Developers.

Collaborative Administrative Trust/Timeshare Compliance LLC, the leading timeshare exit company and industry watchdog, recorded a lien of more than $200 million against five of the biggest timeshare resort developers.

> Read Article

### Timeshare Compliance Wins Key Ruling from Federal Court, Lawsuit Against Hilton's Diamond Resorts Will Proceed.

Nation's leading timeshare exit company and industry watchdog wins a major victory for victimized timeshare owners as a U.S. District Court judge ruled a lawsuit against giant Diamond Resorts (Hilton) will go forward.

> Read Article

### Developer study finds that 85% of timeshare owners regret their purchase citing money, fear, confusion, intimidation, and distrust.

Article highlights a study conducted by Dr Amy Gregory on "The Effects of Buyer Regret on Rescission: Recognizing, Revealing and Rectifying Regret." of timeshare owners and the impact of buyer regret-and-remorse on rescission decisions.

> Read Article

### Timeshare Compliance Secures Freedom For 800+ Clients From Timeshare Contracts in 2022.

More than 800 U.S. timeshare owners will enjoy a new sense of freedom during as Timeshare Compliance, the leading timeshare exit company in America, secured their release from timeshare contracts owed to resort owners in one of the biggest timeshare exit settlements in the industry.

> Read Article

---

Document title: Cancel My Timeshare | Timeshare Cancellation - Timeshare Exit Company
Capture URL: https://timesharecompliance.com/
Capture timestamp (UTC): Thu, 25 Apr 2024 16:49:22 GMT

Article highlights a study conducted by Dr Amy Gregory on "The Effects of Buyer Regret on Rescission: Recognizing, Revealing and Rectifying Regret." of timeshare owners and the impact of buyer regret-and-remorse on rescission decisions.

> Read Article

sense of freedom during as Timeshare Compliance, the leading timeshare exit company in America, secured their release from timeshare contracts owed to resort owners in one of the biggest timeshare exit settlements in the industry.

> Read Article



### Calculating the True Expense of a Timeshare

The concept of vacation ownership has long been pitched as a financially sensible choice for frequen...

02 May, 2023



### Considering Purchasing a Timeshare? Discover why this decision might not be the best choice for you.

Timeshare sales agents are known for their convincing tactics. For example, in 2022, the timeshare i...

05 May, 2023



### How Developers Use Sneaky Tactics for Timeshare Upgrades

Timeshare companies are notorious for their high-pressure tactics to attract new buyers and persuade...

04 June, 2023



### How to Get Out of a Timeshare Without Ruining My Credit

Finding a solution to divest yourself of a timeshare without causing damage to your credit can be a ...

16 August, 2023



### Is Cancelling a Timeshare a Challenging Process?

Terminating a timeshare agreement can be a complex and costly endeavor. Despite efforts to cancel, o...

02 September, 2023



### How to Cancel a Timeshare Contract

This article explains the "INS AND OUTS" of cancelling an unwanted timeshare and what resources ...

20 July, 2023

**TIMESHARE EXIT BLOG**

Document title: Cancel My Timeshare | Timeshare Cancellation - Timeshare Exit Company
Capture URL: https://timesharecompliance.com/
Capture timestamp (UTC): Thu, 25 Apr 2024 16:49:22 GMT

**TIMESHARE EXIT BLOG**

# FREQUENTLY ASKED QUESTIONS

HOW DO I START THE PROCESS OF EXITING MY TIMESHARE CONTRACT?    +

HOW LONG CAN IT TAKE TO EXIT MY TIMESHARE CONTRACT?    +

WHY SHOULD I USE TSC'S SERVICES?    +

HOW WILL I WORK WITH TSC?    +

WHY DOES TSC SAY IT IS A CONSUMER ADVOCACY FIRM?    +

HOW MUCH DOES TSC CHARGE FOR ITS EXIT SERVICES?    +

WHAT SERVICES DOES TSC PROVIDE?    +

WHAT ARE MY OPTIONS OTHER THAN PAYING FOR TSC'S SERVICES?    +

CAN I STOP PAYING ON MY TIMESHARE?    +

WHAT IF I HAVE ALREADY STOPPED PAYING ON MY TIMESHARE?    +

CAN THE EXIT PROCESS AFFECT MY CREDIT?    +

**MORE TIMESHARE EXIT QUESTIONS**

## CAN THE EXIT PROCESS AFFECT MY CREDIT?   +

**MORE TIMESHARE EXIT QUESTIONS**

# AS SEEN ON...

    

# TO CANCEL YOUR TIMESHARE CALL: 855-947-5064



23161 Mill Creek Drive | Suite 320 | Laguna Hills, CA 92653

HOME | PROCESS | FAQs | REVIEWS | ABOUT US | TEAM | CONTACT

Timeshare Compliance™© 2024 All Rights Reserved. Timeshare Compliance™ is a trademark of Savi Collaborative, LLC

**PRIVACY POLICY | TERMS OF SERVICE | TIMESHARE EXIT LAWS BY STATE**

DISCLAIMER: Timeshare Compliance is not a law firm nor do we provide legal advice. We are not a credit repair company. We do not provide advice on credit repair nor do we offer credit repair services.

# EXHIBIT 3



| | |
|---|---|
| Document title: | Our Process – MXM Legal |
| Capture URL: | https://mxm.legal/our-process/ |
| Page loaded at (UTC): | Fri, 26 Apr 2024 14:41:49 GMT |
| Capture timestamp (UTC): | Fri, 26 Apr 2024 14:41:50 GMT |
| Capture tool: | 2.58.2 |
| Collection server IP: | 52.5.8.50 |
| Browser engine: | Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/121.0.6167.85 Safari/537.36 |
| Operating system: | linux x64 (Node v20.5.1) |
| PDF length: | 3 |
| Capture ID: | 6e5VsbYvVhQfgyjMPDDV8V |
| User: | automation@page-vaul |

PDF REFERENCE #:          e3NNc3FfiNcxyMYpXSN4Fx



# MXM LEGAL

HOME    OUR TEAM    OUR PROCESS    OTHER LEGAL SERVICES    CONTACT US    (714) 604 2383

# OUR PROCESS

## Intake Form

Fill out our customized intake form so that we can create your file with all up-to-date pertinent information. The questions are designed to give us a full understanding of your situation and allow us to formulate the best course of action.



## Welcome Call

We will call you to welcome you to the firm and this process. In this call, we will explain the process and what you can expect, as well as answer any questions you may have. After the call, we will send you a letter setting out everything we covered in your welcome call.

## FAQs and Timeline

We know you have questions, and we do our best to address them from the beginning. We will send you an FAQ sheet and a timeline for your review.

## Cease and Desist Letter

## Cease and Desist Letter

We will issue the necessary letters pursuant to the Fair Credit Reporting Act to protect your credit throughout your timeshare dispute.

## Demand Letter

We will assess your matter, and all variables to determine how to get you the desired resolution. If a demand letter is the best tool for the job it is the tool we will use.

## Timeshare Legal Advice

One of our strongest services is offering you timeshare legal advice. We will review all correspondence you receive from your developer and offer you our legal analysis of where you are in the process, what the next steps are, and what collateral consequences there may be in the future. You have an attorney on your side.

The information on this website is for general information purposes only. Nothing on this site should be taken as legal advice for any individual case or situation. This information is not intended to create, and does not constitute, an attorney-client relationship. Attorney Advertising.

Copyright © 2022 MXM LEGAL
Privacy Policy
Law Firm Web Design by PointClick.io

# EXHIBIT 4

| | |
|---|---|
| **From:** | Giselle Hernandez <giselle@mxm.legal> |
| **Sent:** | Wednesday, April 24, 2024 3:39 PM |
| **To:** | Fuentes, Fabiola |
| **Subject:** | Ownership Account |
| **Attachments:** | 2C. Onboard - Power of Attorney_ 1 Signer 12.19.20 (Robert Macrae) (1).pdf |

**This e-mail is from an external source. Use caution when opening attachments or clicking on links.**

To whom it may concern,

We represent the client, Robert Macrae, with their timeshare matters. Contract No. 002192001175.

Please see the attached Power of Attorney.

The client requests for a status on their account. Specifically, if the account is active or closed due to not receiving any correspondence in some time.

We look forward to hearing from you. Thank you for your attention to this matter.

Best regards,



Giselle Hernandez
Senior Case Manager

**MXM LEGAL**
Timeshare Contract Cancellation

714.604.2383
137 S. Prospect Ave.
Tustin, CA 92780
Giselle@MXM.Legal

**From:** Giselle Hernandez <giselle@mxm.legal>
**Sent:** Wednesday, April 24, 2024 4:50 PM
**To:** Fuentes, Fabiola
**Subject:** Ownership Account
**Attachments:** 2C. Onboard - Power of Attorney_ 1 Signer 12.19.20 (Cynthia Gallagher).pdf

**This e-mail is from an external source. Use caution when opening attachments or clicking on links.**

To whom it may concern,

We are the firm representing clients, Robert Howard and Cynthia Gallagher, with their timeshare matters. The client's account no. 00203193816, 001061504882.

Please see attached power of attorney.

The client's request an account status. Specifically, if the account is active or closed due to not receiving any correspondence in some time.

We look forward to hearing from you.

Best regards,



Giselle Hernandez
Senior Case Manager

**MXM LEGAL**
Timeshare Contract Cancellation

714.604.2383
137 S. Prospect Ave.
Tustin, CA 92780
Giselle@MXM.Legal

**From:** Giselle Hernandez <giselle@mxm.legal>
**Sent:** Wednesday, April 24, 2024 7:13 PM
**To:** Fuentes, Fabiola
**Subject:** Account Status

**This e-mail is from an external source. Use caution when opening attachments or clicking on links.**

To whom it may concern,

We are the firm representing clients, Robert Morrison lll and Karen Piasecki, with their timeshare matters. The client's account no. 000641524947, 00202528736

The client's request an account status. Specifically, if the account is active or closed due to not receiving any correspondence in some time.

We look forward to hearing from you.

Best regards,



Giselle Hernandez
Senior Case Manager

MXM LEGAL

Timeshare Contract Cancellation

714.604.2383
137 S. Prospect Ave.
Tustin, CA 92780
Giselle@MXM.Legal

# EXHIBIT 5





**Complaints**

# MXM Legal

Lawyers

View Business profile

**Need to file a complaint?**

BBB is here to help. We'll guide you through the process.

File a Complaint

## Complaint Details

Note that complaint text that is displayed might not represent all complaints filed with BBB. See details.

**Complaint Type:**
Product Issues
**Status:**
Answered


**Initial Complaint**
07/04/2024

I retained MXM Legal (formerly McCroskey Legal) in Oct 2020 as Legal representation for timeshare exit. In the past four years I have received spotty communication, most of which only because I had sent numerous emails back to back trying to get any information from them in regards to any progress being made on my case. To date, MXM has not provided me with any proof that they have been in contact with the ***************** on my behalf. I've paid both MXM and Timeshare exit company a substantial amount of money and have nothing to show for it. I am still responsible for the Timeshare that these two companies guaranteed they would get me released from. At this point I just want my money refunded because I shouldn't have to chase after a company that I paid to do a service. They should be in regular contact with me. Instead, I haven't heard from them since last November, and once again, that was only

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our Privacy Policy to learn more.



**Business response**
07/12/2024

MXM Legal is committed to providing professional legal services, and we take all client feedback into consideration.  We have reviewed the details of this complaint. While we strive to address all client expectations at the beginning of the attorney client relationship, there can sometimes be differences in understanding or perception of legal processes and outcomes.  Please feel free to contact us directly. We are here to answer any questions you may have regarding your matter.  Incoming phone calls are answered live during business hours which are 8:00 a.m to 5:00 p.m PST Monday through Friday, and emails are responded to daily.

**Complaint Type:**
Product Issues
**Status:**
Answered



**Initial Complaint**
04/19/2024

In March 2023, ********************* contacted us about getting out of our timeshare that we just bought in February while on a family vacation. The timeshare was bought under a very high pressure sales pitch. When we got home from the vacation and I tried to book a stay, I quickly realized that there was nothing available. It was almost like ******************** knew that we were not happy. They called us out of the blue and had a great sales pitch on how they could help if we paid them $5,277.24, so we felt overwhelmed and wanted out of the timeshare so we said yes and took out a loan with RSG. As soon as the loan was approved, we had to dish out another $950 to MXM legal who was the attorney to work on getting us out of the timeshare. We never had a phone conversation with MXM. Supposedly in October, the timeshare developer offered deed in lieu of foreclosure (I think because we never made a payment). MXM didnt do anything. Regardless, we did the deed in lieu of foreclosure that was offered. In December, I was still getting notices from the Timeshare developer that we owed money and my credit was being affected. When asking MXM to try to contact the developer, they said the case was closed and I needed to do that myself. I found this appalling that they would not help. I dont think they did anything to help us get out of the timeshare. It all happened because we didnt make any payments to the developer. I want my money back from MXM legal! They are scammers just like the timeshare companies!

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our [Privacy Policy](#) to learn more.



**Business response**
04/19/2024

The client retained MXM Legal for legal services. We provided the scope of service in a Retainer Agreement and Welcome Letter; both read and signed by the client. Their account details the rendered services and provides a resolution to their timeshare matter. We have contacted the client via email and have made multiple attempts to reach the client by phone to address any questions or concerns they may have. We have respectfully declined their request for a refund.



**Customer response**
04/19/2024

Respectfully MXM did nothing but take my money. I did all of the corresponding with ********  and when ******** responded, they responded to me. I then forwarded my response to MXM. I would like my $950 refunded.

**Complaint Type:**
Service or Repair Issues
**Status:**
Answered



**Initial Complaint**
02/05/2024

This law firm are complete scam artists. I hired them to assist with me getting out of a timeshare. After hiring them they have now advised my timeshare is in Foreclosure when I have been making my monthly payments. No company forecloses on people who have been paying every month. MXM Legal took my money and didn't even have an attorney work on the case. I spoke to a woman ******* who was a case manager.



**Business response**
02/08/2024

We deny the complaint allegations, we have issued a refund as of 2/7/24.

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our Privacy Policy to learn more.

**Complaint Type:**
Service or Repair Issues
**Status:**
Answered

 **Initial Complaint**
11/18/2023

As the previous complaint states, I also retained ******** Legal to help cancel my timeshare. Shortly thereafter they changed their name to MXM Legal. The only thing that has remained the same is their absolutely abhorrent communication and failure to do their job. It has been 2 years now and they still have not resolved the matter. In fact, I just today received an email saying they needed me to sign a document to initiate contact with the timeshare company. Two problems: 1) I signed this document years ago. 2) Even if I had not, why on earth would they think waiting 2years to initiate contact with the timeshare developer is a good idea?! Every time I try and talk to them they give me the run around and nothing happens. They have failed at keeping the developer from contacting me, despite their claim that they would. They have failed to make any progress. I have paid them 100% of their legal fees and they have done 0% of the work they promised. I am pretty sure they are a scam. I highly advise anyone considering them to run screaming in the opposite direction. 100% joke of a company.

 **Business response**
12/08/2023

We have refunded our client the full amount of his fees paid.
Miranda McCroskey

**Complaint Type:**
Service or Repair Issues
**Status:**
Resolved

 **Initial Complaint**
11/01/2022

McCorsley legal was retained to help get me out of a timeshare. They then changed law offices to MXM legal and gave me no new contact info nor notice of the change. They also claimed to have been working on my behalf. After doing some questioning at the timeshare company they had no records of talking with the lawfirm. I requested the lawfirm to give me written accounts of time and dates of letters and calls being sent, but never received these. Not once. I also asked them in writing to not speak about my case with ********************* and that ********************* did not speak on my behalf. They continued to do this. Once I finally got

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our Privacy Policy to learn more.

offer and they once again said it would be the best i could get. I then contacted the timeshare myself and got a much more desirable and much better offer with one simple email.

 **Business response**
11/07/2022

Dear Better Business Bureau,
We take client complaints very seriously and ask that any concerns be addressed to us so we may appropriately take action to resolve this matter.

We deny our client's allegations that we failed to communicate and/or failure to take action.
Our firm rebranded (name only, contact information remained the same) in January 2022 and our clients were notified via email in a timely manner.  No other change that would impact our services rendered took place.

Our firm obtained multiple settlement offers from the timeshare developer which the client was not willing to accept.

********************* acts as the clients representative and it is imperative that communication between us remain open.

Based on the clients refusal to accept the negotiated settlement offer, and his complaint with the BBB we are happy to close out his file.

 **Customer response**
11/08/2022

Their contact information did not stay the same. They went from mccroskey.com to mxm.com. I sent multiple emails to an old contact with no response before this was realized.
Also, I retained McCroskey legal to be my lawyer and was told by ********************* as well as mccroskey legal that rag was solely there as a middleman to find me a law firm. My paperwork never gave permission for McCroskey to speak with them on my behalf and they actually tried to cancel my contract without my cinsent. Which is why I did not want them to be contacted.
i believe under ********** law if I gave written notice to not speak with ********************* they should have ceased communication.
As to the proposals from ***********, the issue is that I was given misleading and bad legal advice to settle with them. Perhaps this is not illegal but certainly not ethical. You were supposed to represent my best interests not save your own time.

 **Business response**
11/09/2022



We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our _Privacy Policy_ to learn more.

*Once it is confirmed that a refund will resolve the complaint it will be issued in the manner in which the payment was made.*

 **Customer response**
11/11/2022

Better Business Bureau:

I have reviewed the response made by the business in reference to complaint ID ********, and find that this resolution would be satisfactory to me.  I will wait for the business to perform this action and, if it does, will consider this complaint resolved.

Regards,

***************************

*Some consumers may elect to not publish the details of their complaints, some complaints may not meet BBB's standards for publication, or BBB may display a portion of complaints when a high volume is received for a particular business. ↵

BBB Business Profiles may not be reproduced for sales or promotional purposes.

BBB Business Profiles are provided solely to assist you in exercising your own best judgment. BBB asks third parties who publish complaints, reviews and/or responses on this website to affirm that the information provided is accurate. However, BBB does not verify the accuracy of information provided by third parties, and does not guarantee the accuracy of any information in Business Profiles.

When considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

BBB Business Profiles generally cover a three-year reporting period. BBB Business Profiles are subject to change at any time. If you choose to do business with this business, please let the business know that you contacted BBB for a BBB Business Profile.

As a matter of policy, BBB does not endorse any product, service or business. Businesses are under no obligation to seek BBB accreditation, and some businesses are not accredited because they have not sought BBB accreditation.

## BBB Rating & Accreditation



**A+**

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our [Privacy Policy](#) to learn more.

Search for Accredited
Businesses in this category

**Years in Business:** 17
**Customer Reviews are not used in the calculation of BBB Rating**

Overview of BBB Rating

## Contact Information

© 2024, International Association of Better Business Bureaus, Inc., separately incorporated Better Business Bureau organizations in the US and Canada, and BBB Institute for Marketplace Trust, Inc. All rights reserved. *In Canada, trademark(s) of the International Association of Better Business Bureaus, used under License.

 137 S Prospect Ave
Tustin, CA 92780-3616

🌐 Visit Website

📞 (714) 604-2383

## Complaints Summary

**6** total complaints in the last 3 years.

**5** complaints closed in the last 12 months.

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our Privacy Policy to learn more.